```
`              UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE
```

Edmund D. LaChance, Jr.


     v.                                   Civil No. 07-cv-121-PB


Jessica C. Millette, and
New Hampshire Attorney General
Kelly Ayotte


**REPORT AND RECOMMENDATION**

Before the Court is Edmund LaChance's complaint (document no. 1) brought pursuant to 42 U.S.C. § 1983, alleging that the defendants have violated his federal constitutional rights. The matter is before me to determine, among other things, whether the complaint states any claim upon which relief might be granted. See United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2); 28 U.S.C. § 1915A(a). Because I find that LaChance has not stated any claim upon which relief might be granted, I recommend that the complaint be dismissed.

Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the

magistrate judge is directed to conduct a preliminary review.  LR
4.3(d)(2).  In conducting the preliminary review, the Court
construes pro se pleadings liberally, however inartfully pleaded.
See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200
(2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and
Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se
pleadings liberally in favor of the pro se party).  "The policy
behind affording pro se plaintiffs liberal interpretation is that
if they present sufficient facts, the court may intuit the
correct cause of action, even if it was imperfectly pled."  See
Castro v. United States, 540 U.S. 375, 381 (2003) (noting that
courts may construe pro se pleadings so as to avoid
inappropriately stringent rules and unnecessary dismissals of
claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997)
(same).  All of the factual assertions made by a pro se plaintiff
and inferences reasonably drawn therefrom must be accepted as
true.  See id.  This review ensures that pro se pleadings are
given fair and meaningful consideration.

## Background

LaChance, twice convicted of rape, is an inmate incarcerated
under the authority of the Massachusetts Department of

Corrections ("MDOC").  In February or March of 2003, LaChance, who had been serving time in Massachusetts, was transferred by MDOC officials to the New Hampshire State Prison ("NHSP"), pursuant to an interstate compact in place authorizing the MDOC to transfer and house their prisoners in other states.  <u>See</u> Mass. Gen. Laws Ann. ch. 125, § 1-2 (2002).

While LaChance was incarcerated at the NHSP, he became acquainted with, and enamored of, a female corrections officer named Jessica Millette.  LaChance alleges that he and Millette had numerous conversations, during which they discussed, among other things, a picture that Millette's daughter had made for her on Mother's Day, Millette's partying and drinking habits, the contact information for someone Millette could call to purchase cocaine for personal use,[1] the identity of Millette's best friend, nightclubs, Millette's prior arrest for driving while intoxicated, and the nature of LaChance's relationship with a woman on his visiting list.  LaChance claims that, despite the friendly nature of their conversations, the relationship between himself and Millette was not inappropriately personal.  LaChance also alleges that on several occasions he professed his

---

[1]LaChance does not believe this information was ever utilized by Millette.

attraction to and romantic interest in Millette, and that she did not ask him to stop or otherwise communicate to him that his statements were undesired, but instead smiled and seemed to enjoy it when he talked about his feelings for her.

LaChance states that because of his friendly relationship with Millette, he became protective of her, and engaged in a number of altercations with both guards and other prisoners when he heard them speak disrespectfully to or about Millette.  When LaChance received disciplinary sanctions as a result of his actions, he alleges that Millette disposed of his extra duty sanctions, left her post to visit him in segregation, and provided him with extra food and linens in the segregation unit.

In July of 2004, LaChance was transferred back to the MDOC. Seven months later, in February of 2005, LaChance sent Millette a letter on stationery that appeared to be from the United States Marshal's office.  LaChance admits that he sent the letter in this guise so that it would bypass security screening at the NHSP.  The letter contained further professions of LaChance's romantic interest in Millette and his desire for a romantic relationship with her.  The letter also included advice to Millette that she be careful about the inmates with whom she got

romantically involved, as some inmates were discussing having had romantic relations with her.  LaChance promised to remain discreet in their relationship, as he was aware that she needed to keep her job for both her own well-being and that of her daughter.  LaChance stated a desire to become a "huge part" of Millette's life and her daughter's life.  Finally, the letter promised that, if Millette failed to affirmatively return his affections, and chose instead not to respond to the letter, that he would make no further attempt to contact her and would consider the possibility of a relationship with her closed.

    Millette did not respond to the letter.  She did, however, give a copy of the letter to her superiors at the NHSP.  Despite LaChance's promise not to pursue Millete if she did not respond to his letter and invite further contact from him, LaChance did make several further efforts to contact Millette directly and indirectly.

    In August of 2004, LaChance had his mother call Millette at the prison.  Millette asked for a return number, saying that she would return the call outside of work hours, but she never called LaChance's mother.

LaChance also asked his brother to do an internet search to locate Millette's home address.  When his brother was unsuccessful in locating the address, LaChance paid someone else to conduct an internet search, and found an address he believed belonged to Millette.  In July of 2005, LaChance had a dozen roses sent to that address and sent another letter to Millette at that address.  LaChance states that because the address was incorrect, Millette never received the roses or the second letter.

In October of 2005, LaChance received a letter from NHSP Major Ross Cunningham advising LaChance not to make any further effort to contact Millette.  Cunningham warned that any future efforts in that vein would be reported to MDOC authorities.  LaChance learned that, although he had not succeeded in making contact with Millette since the letter he sent to her in February of 2005, the MDOC officials had been monitoring all of his incoming and outgoing mail and phone communications, and therefore were aware of all of LaChance's attempts to locate and contact Millette.  On November 13, 2005, MDOC officials advised LaChance that he was not to contact Millette, as she wanted no further relationship with him.

LaChance claims that in April of 2006, he was involved in litigation against MDOC officials for retaliating against him.[2] LaChance alleges that the MDOC officials used the letters sent to Millette as evidence against him in that litigation.  LaChance states that he became extremely angry at Millette for providing information to the MDOC officials.  He expressed his anger by sending letters to the Governor of New Hampshire and two New Hampshire newspapers, which stated that Millette had been arrested for driving while intoxicated and had engaged in improper conduct of an intimate nature with inmates at the NHSP.  LaChance also sent copies of the letters to Millette and Cunningham.

In response to those letters, Millette applied for and received a temporary ex parte restraining order against LaChance in the Concord District Court ("CDC") on May 8, 2006, claiming he had stalked her, in violation of N.H. Rev. Stat. Ann. ("RSA") 633:3-a.  The order prohibited LaChance from making direct or indirect contact with either Millette or her daughter.  A hearing

---

[2]The details of this litigation are not reported in the complaint and are not, in any event, relevant to my recommendation in this matter.

to determine whether or not a permanent order should issue was scheduled for June 6, 2006.

Prior to the June 6 hearing, LaChance filed pre-hearing motions in the CDC.  In order to avoid contact with Millette, LaChance sent extra copies of the motions to the CDC for forwarding on to Millette in advance of the hearing.  When she received those motions, Millette contacted MDOC officials and advised them that LaChance had violated the May 8 restraining order.  As a result, LaChance, who was already incarcerated in a high security "supermax" correctional facility, was placed into "ultramax" status within that institution, subjecting him to both heightened monitoring by prison investigators and decreased human contact.  When the MDOC officials were made aware that the court, and not LaChance himself, had forwarded the motions to Millette, he was removed from "ultramax" status, although he was still subjected to heightened monitoring of his mail.  After the June 6, 2006 hearing, at which LaChance appeared by videoconference, a permanent order was issued prohibiting him from having any direct or indirect contact with Millette or her daughter for a period of one year.

On June 23, 2006, LaChance filed a grievance against Millette with the NHSP, complaining that, in retaliation for his letters to the Governor and the newspapers, Millette sought the restraining order against him, and then falsely informed MDOC officials that LaChance had contacted her.  On June 24, 2006, Millette filed a motion in the CDC seeking a finding that LaChance had violated the restraining order by filing the grievance.  Millette's motion was denied.

## Discussion

I.  Section 1983 Claim

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983[3]; City of Okla. City v. Tuttle, 471 U.S. 808, 829 (1985); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  "To state a claim under § 1983, a

---

[3] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

9

plaintiff must make two showings: the existence of a federal constitutional or statutory right; and a deprivation of that right by a person acting under color of state law." <u>Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado</u>, 84 F.3d 489, 491 (1st Cir. 1996). This does not mean, however, that every action taken by a person who happens to be a state employee is attributable to the state or undertaken under color of state law. <u>See</u> <u>Martinez v. Colon</u>, 54 F.3d 980, 986 (1st Cir. 1995). A private action by a state employee taken outside the line of duty, "and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." <u>Id.</u> at 986-87. To determine whether an action is taken under color of state law for purposes of § 1983, the Court examines whether the challenged conduct is related in a meaningful way either to the officer's governmental status or to the performance of her duties. <u>Id.</u> at 987.

 LaChance alleges that Millette, acting under color of state law, violated his federal constitutional rights by (1) seeking a restraining order against him, (2) falsely notifying MDOC officials that he had contacted her in violation of the May 8 temporary restraining order, and (3) petitioning the CDC to find

that LaChance had violated the June 6 restraining order when he filed a grievance against her at the NHSP.  I find that all of these actions, as alleged, were taken by Millette in her capacity as a private individual, rather than in her capacity as a state actor.  She individually applied for protection for herself and her daughter in the CDC.  There is no indication that the state in any way authorized that action or undertook the action on Millette's behalf, or otherwise participated in the action.  Millette's communication with the CDC regarding an alleged violation of the restraining order was, similarly, taken in her capacity as a private individual, even though the motion was made in response to an action LaChance took against her in her capacity as a state employee.  Had Millette challenged the grievance administratively with her employer, the state of New Hampshire, rather than in a private action before the CDC, such a response would have been made as a state actor.

LaChance's third allegation in support of his claim against Millette is that she contacted MDOC officials and advised them that LaChance had violated a court order.  Again, there is no indication that this act was taken in her capacity as a state employee, or under the color of state authority.  Millette is

11

alleged, simply, to have provided information to the MDOC regarding LaChance's allegedly illegal conduct in a matter between himself and Millette, as any private citizen could have done.  Neither the fact of Millette's employment by the state of New Hampshire, nor the fact that Millette's state employment was the source of her initial contact with LaChance, has the power to transform otherwise private conduct into state action.  I find that LaChance has not alleged any conduct by Millette that could be construed, however generously I read the complaint, as state action.  Although state action is actionable under § 1983 if it violates constitutional rights, the United States Constitution "erects no shield against merely private conduct, however . . . wrongful."  <u>Blum v. Yarketsky</u>, 457 U.S. 991, 1002 (1981).  Accordingly, LaChance's claim under § 1983 fails, and I recommend that the claim, and Millette, be dismissed from this action.

II.  <u>Constitutionality of Stalking Statute</u>

LaChance alleges that New Hampshire's stalking statute, RSA 633:3-a, is unconstitutional because it is vague and overbroad, and because it impermissibly shifts the burden of proof to the accused.  LaChance names the Attorney General of New Hampshire as

the defendant to this claim, charging that her enforcement of the statute violates his First and Fourteenth Amendment rights.[4]

"Under [the] Rooker/Feldman abstention doctrine . . . a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994) (citing D.C. Ct. App. v. Feldman, 460 U.S. 462, 482 (1983) and Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923)); see also Galibois v. Fisher, 174 Fed. Appx. 579, 580 (1st Cir. 2006) (citing Lance v. Dennis, 546 U.S. 459, 466 (2002) and Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280, 291 (2005)) (applying the Rooker-Feldman doctrine to bar review of cases where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that

---

[4]LaChance filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254, alleging that the June 6 restraining order was improperly issued against him. See LaChance v. N.H. Attorney Gen., Civ. No. 07-127-PB (D.N.H. Apr. 30, 2007). The habeas petition was dismissed because LaChance was not "in custody," as required by § 2254 to establish the subject matter jurisdiction of this Court. See id. (Order approving Report and Recommendations May 22, 2007).

judgment."). Construing the complaint liberally, it appears that LaChance grounds his standing to challenge the stalking statute on the fact that the June 6, 2006 restraining order was issued against him based on the Concord District Court's finding that LaChance had violated the allegedly unconstitutional stalking statute. This action, therefore, directly challenges the legality of the restraining order issued by the state court pursuant to RSA 633:3-a.

In order to grant plaintiff the relief he seeks, this Court would have to invalidate the Concord District Court's order issuing the restraining order.[5] LaChance asks this Court to pass judgment on the state courts' rulings and decisions as though this Court were an appropriate appellate venue in this matter,

---

[5] In the habeas petition previously filed by plaintiff, see LaChance v. N.H. Attorney Gen., Civ. No. 07-127-PB, LaChance argued that he was denied access to New Hampshire legal materials by the MDOC and, therefore, was denied the opportunity to litigate the constitutionality of the stalking statute during the restraining order proceedings in the Concord District Court, and that he was denied a free hearing transcript which denied him the ability to appeal the matter in the New Hampshire Supreme Court. While these types of arguments may be relevant to a claim for the denial of access to the courts, a challenge to the restraining order is not actionable here under § 1983. The proper avenue to utilize to challenge any aspect of the issuance of the restraining order is by direct appeal through the state court system, and not by collateral attack on the enabling state statute in the federal district court.

which it is not.  Accordingly, as it appears that the state courts have entered final judgment in these matters, the <u>Rooker-Feldman</u> abstention deprives this Court of jurisdiction over this claim, and I recommend that it be dismissed from this action on that basis.

## Conclusion

For the foregoing reasons, I recommend that this action be dismissed in its entirety.  Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

/s/ James R. Muirhead
James R. Muirhead
United States Magistrate Judge

Date:    September 20, 2007

cc:      Edmund D. LaChance, pro se